**Exhibit A to Declaration of Shawn Patrick Regan**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

D'ARCY QUINN,

          Plaintiff,

          V.

ALTRIA GROUP, INC. (f/k/a PHILIP MORRIS
COMPANIES), d/b/a itself, d/b/a ALTRIA
CORPORATE SERVICES, INC. (f/k/a PHILIP
MORRIS CORPORATE SERVICES, INC.),
d/b/a PHILIP MORRIS INTERNATIONAL, INC.,
d/b/a PHILIP MORRIS INTERNATIONAL
MANAGEMENT, S.A.;
and
PHILIP MORRIS INTERNATIONAL, INC., d/b/a
itself and d/b/a PHILIP MORRIS
INTERNATIONAL MANAGEMENT, S.A.,

          Defendants.

------------------------------------------------------------X

**JUDGE SWAIN**

**'07 CIV 8783**

**COMPLAINT**



Plaintiff, by his attorneys, Broach & Stulberg, LLP, complaining of defendants, alleges:

## PRELIMINARY STATEMENT

1.     This action is brought against (a) defendant Altria Group, Inc. (f/k/a Philip Morris

Companies), d/b/a itself, d/b/a Altria Corporate Services, Inc. (f/k/a Philip Morris Corporate

Services, Inc.), d/b/a Philip Morris International, Inc., d/b/a Philip Morris International

Management, S.A.; and (b) defendant Philip Morris International, Inc., d/b/a itself and d/b/a

Philip Morris International Management, S.A., (collectively, "defendants").

2.     Plaintiff brings this action to remedy discrimination on the basis of age in

violation of the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. §

621, et seq., and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 296, et

seq., and to remedy retaliation in violation of the ADEA, 29 U.S.C. § 626(d), and the NYSHRL,

N.Y. Exec. L. § 296(1)(e). Plaintiff seeks injunctive and declaratory relief, monetary damages,

and all other appropriate legal and equitable relief, pursuant to 28 U.S.C. § 2201,

29 U.S.C. § 626(b), N.Y. Exec. L. § 297(4)(c) and (9), and all other applicable federal and state

laws.

## JURISDICTION AND VENUE

3.      Jurisdiction of this Court over plaintiff's ADEA claims is invoked pursuant to 29

U.S.C. § 626(c) and 28 U.S.C. §§ 1331 and 1343(a)(4).

4.      Jurisdiction of this Court over plaintiff's NYSHRL claim is invoked pursuant to

28 U.S.C. § 1367(a), in that the NYSHRL is so related to plaintiff's ADEA claims as to form the

same case or controversy under Article III of the United States Constitution.

5.      Venue is proper within this District, pursuant to 28 U.S.C. § 1391(b), in that

defendants reside and can be found in this District.

6.      Plaintiff has complied with all administrative requirements of the ADEA. On May

29, 2007, plaintiff timely filed a Charge of Discrimination against Altria Group, Inc. (f/k/a Philip

Morris Companies), d/b/a Altria Corporate Services, Inc. (f/k/a Philip Morris Corporate Services,

Inc.), d/b/a Philip Morris International, Inc., d/b/a Philip Morris International Management, S.A.

with the United States Equal Employment Opportunity Commission ("EEOC") and the New

York State Division of Human Rights, complaining of the acts of discrimination on the basis of

age and the acts of retaliation alleged herein. Altria Group, Inc., Altria Corporate Services, Inc.,

Philip Morris International, Inc., and Philip Morris International Management, S.A. each

appeared and responded to plaintiff's Charge of Discrimination.

## PARTIES

7.      Plaintiff is a United States citizen. His date of birth is October 5, 1955.

8.      Plaintiff resides in Switzerland.

9.      At all pertinent times herein until the involuntary termination of his employment, plaintiff was employed by defendants in Switzerland and was responsible for international anti-counterfeiting and anti-smuggling operations. At all pertinent times herein, plaintiff was an "employee" within the meaning of 29 U.S.C. § 630(f).

10.     Altria Group, Inc. is a Virginia corporation authorized to conduct business in New York. Upon information and belief, Altria Group, Inc. maintains its principal place of business at 120 Park Avenue, New York, New York 10017. Altria Group, Inc. is an "employer" within the meaning of 29 U.S.C. §§ 630(b) and 1002(5), and N.Y. Exec. L. § 292(5).

11.     Altria Corporate Services, Inc. (f/k/a Philip Morris Corporate Services Inc.) is a branch of Altria Group, Inc. located in New York and Lausanne, Switzerland. Altria Corporate Services, Inc.'s predecessor, Philip Morris Corporate Services, Inc., was a branch of Altria Group, Inc.'s predecessor, Philip Morris Companies;

12.     Philip Morris International, Inc. is a wholly-owned subsidiary of Altria Group, Inc. and a Virginia corporation. Upon information and belief, at all pertinent times herein, Philip Morris International, Inc. has maintained its principal place of business in New York and has conducted business in New York.

13.     Upon information and belief, at all pertinent times herein, Philip Morris International Management, S.A. is the international headquarters of Philip Morris International, Inc. and, until at least in or around May 4, 2007, was publicly held out as such.

3

14.     Upon information and belief, at all pertinent times herein, Altria Group, Inc. has done business as itself, Altria Corporate Services, Inc., Philip Morris International, Inc., and Philip Morris International Management, S.A.

15.     Upon information and belief, at all pertinent times herein, Altria Group, Inc. has controlled Altria Corporate Services Inc., Philip Morris International, Inc. and Philip Morris International Management, S.A., within the meaning of 29 U.S.C. § 623.

16.     Upon information and belief, at all pertinent times herein, defendant Altria Group Inc. has made, reviewed and approved decisions concerning personnel matters (including, without limitation, promotions and terminations), regulatory compliance matters, and other matters related to labor relations and operations, for Altria Corporate Services, Inc., Philip Morris International, Inc. and Philip Morris International Management, S.A.

17.     Upon information and belief, at all pertinent times herein, Altria Group, Inc. has maintained an "Altria Code of Conduct for Compliance and Integrity" governing all employees of "Altria Group companies" and "Altria's companies' employees," including, without limitation, employees of Altria Group, Inc., Altria Corporate Services Inc., Philip Morris International, Inc. and Philip Morris International Management, S.A.

18.     Upon information and belief, at all pertinent times herein, defendant Philip Morris International, Inc. has done business as itself and as Philip Morris International Management, S.A.

19.     Upon information and belief, defendant Philip Morris International, Inc. is an "employer" within the meaning of 29 U.S.C. §§ 630(b) and 1002(5), and N.Y. Exec. L. § 292(5).

20.    Upon information and belief, at all pertinent times herein, Philip Morris International, Inc. has controlled Philip Morris International Management, S.A., within the meaning of 29 U.S.C. 623.

21.    Upon information and belief, at all pertinent times herein, Philip Morris International, Inc. has made, reviewed and approved decisions concerning, among other things, personnel matters (including, without limitation, promotions and terminations), regulatory compliance matters and other matters related to labor relations and operations, for Philip Morris International Management, S.A.

22.    At all pertinent times herein, the decisions referenced in paragraphs 16 and 21 herein have included decisions concerning employees in the department to which plaintiff was assigned, known as the Brand Integrity department.

## STATEMENT OF FACTS

23.    In 2000, plaintiff commenced employment with defendants as Counsel for anti-counterfeiting matters involving Russia, Khazakhstan and the Ukraine.  In 2000, plaintiff entered into an employment agreement executed by Philip Morris Corporate Services, Inc., now known as Altria Corporate Services, Inc.

24.    In or around 2001, defendants promoted plaintiff to Investigative Case Director with responsibility for the European Union and Eastern Europe.  In or around January 2003, plaintiff became the Investigative Case Director for Central and Eastern Europe. In or around June 2003, plaintiff's title changed to Brand Integrity Director, Central and Eastern Europe, his last title at defendants. In that position, plaintiff was responsible for defendants' anti-

5

counterfeiting and anti-smuggling operations in Eastern and Central Europe and supervised in-house staff and private investigators. At all pertinent times herein, plaintiff's job performance at defendants was excellent.

25.    Despite plaintiff's excellent job performance, his career at defendants was undermined by virulent age discrimination, evidenced by explicit personnel policies, corporate practices and statements of high-level executives. This age discrimination, as well as retaliation against plaintiff for his complaints to management about age discrimination, resulted in plaintiff's discharge. Defendants' discrimination and retaliation against plaintiff are evidenced by, among other things, the acts referenced in paragraphs 26 through 49 herein.

26.    In planning and implementing hirings, firings and promotions of Brand Integrity department personnel, defendants explicitly considered the age of candidates and employees. Among other things, at meetings convened to consider the career development of Brand Integrity department personnel (known as "Advanced Planning" meetings), defendants' Human Resources department presented PowerPoint slides variously listing individual employees' birthdates and depicting graphs of (a) the average age and seniority of the Brand Integrity department workforce versus the average age and seniority of Philip Morris International, Inc.'s workforce, (b) the average age and seniority of employees employed in particular business units of the Brand Integrity department, and (c) changes in these factors from year-to-year.

27.    Examples of the PowerPoint slides referenced in paragraph 26 herein are attached hereto as exhibits. Exhibit A is a copy of a February 2005 slide containing a graph, entitled "Age Distribution," which shows the average age of employees in each business unit of the Brand Integrity department and notes that plaintiff's unit, "CE/EE" (Central Europe and Eastern

6

Europe), had the maximum average age of those business units. Exhibit B is a copy of a February 2005 slide containing a graph, which compares the average age and seniority of certain Brand Integrity department employees versus the average age and seniority of comparably-ranked employees in Philip Morris International, Inc. That graph also notes that the average age and seniority of the Brand Integrity department employees were higher than those of the comparably-ranked Philip Morris International, Inc. employees. Exhibit C is a copy of a graph, which contains statistics on Brand Integrity department promotions, transfers, lateral moves, new hires and terminations in 2004 and notes the average age of all employees in the Brand Integrity department as of January 1, 2005.

28.    Defendants' senior management explicitly expressed its decision to not hire, to not promote, or to fire particular employees, including United States citizens employed by defendants abroad, because they were "too old." At all pertinent times herein, employees in their 40s or 50s were referred to by defendants' senior management as not having the "right profile," meaning that they were too old for their jobs, and as "blockers," meaning that they were preventing the promotion of younger employees. Defendants' senior management also repeatedly expressed the need to bring in "fresh young talent" to make the company "winning and agile."

29.    Upon information and belief, (a) defendants have terminated the employment of Brand Integrity department employees, including United States citizens employed abroad, who are over 40, on the basis of age, (b) as of approximately May 2007, the last approximately 18 hires into the Brand Integrity department were in their 20's and 30's and, for the most part,

replaced employees in their 40's and 50's, and (c) the average age of the Brand Integrity department workforce has declined significantly in recent years.

30.     After plaintiff turned 50 in 2005, he was told by defendants' senior management, in words or effect, that he no longer had the "right profile" and should be "moving on."

31.     At an Advanced Planning meeting in January 2006, defendants' senior management announced plans to force the termination of two Brand Integrity department staff members who were in their late 50's because the two did not have "the right profile anymore." Less experienced persons in their 30s were the designated successors for the two staff members. At the meeting, plaintiff vigorously protested defendants' age-based decision-making practices to senior management, including Andre Reiman, Philip Morris International, Inc.'s Senior Vice President for Trade Practices and Compliance.  Mr. Reiman reacted harshly to plaintiff's protests.

32.     Shortly after the January 2006 Advanced Planning meeting, plaintiff received a 2005 written job evaluation, signed by Mr. Reiman and by plaintiff's direct supervisor, Constantin Douros, Philip Morris International, Inc.'s Director, Brand Integrity, which unjustifiably criticized plaintiff and lowered his overall performance rating from "Exceeds [expectations]" – the rating he had received from Mr. Douros and Mr. Reiman in each of the previous two years -- to "Good."

33.     Following the January 2006 Advanced Planning meeting and continuing through in or around December 2006, plaintiff was systematically excluded from key company meetings and blocked from attending meetings with outside agencies concerning operations in regions under his jurisdiction.  Instead, defendants chose less experienced employees in their 30s and 40s to attend those meetings.

8

34.     Following the 2006 Advanced Planning meeting and continuing through 2006, defendants' senior management treated plaintiff with hostility.  Among other things, in March 2006, Mr. Reiman, in the presence of Michael Fawlk, then-Philip Morris International, Inc.'s Vice President, Compliance, angrily grabbed plaintiff from behind and pulled him into a hallway.

35.     At his mid-year performance review in August 2006, plaintiff's immediate supervisor, Mr. Douros, told him, in words or effect, "Don't think about hanging around for early retirement," "There's nothing left for you," "Given your age, you won't be offered another job in the company," and "You no longer have the right profile."

36.     Approximately one month later, Mr. Reiman boasted, in the presence of plaintiff and others, that he communicated directly to Altria Group, Inc.'s Board of Directors and personally with "Louis" (referring, upon information and belief, to Louis Camilleri, Altria Group, Inc.'s Chairman and Chief Executive Officer), about who should be fired following compliance audits.  Upon information and belief, the compliance audits to which Mr. Reiman referred were conducted periodically by Altria Group, Inc., through its branch, Altria Corporate Services, Inc. (formerly Philip Morris Corporate Services, Inc.).

37.     On or about October 2, 2006, plaintiff asked Human Resources Manager Birute Vaitkeviciene why senior management had refused to hire a well-qualified 56-year old candidate for a Brand Integrity department staff position in Poland.  Ms. Vaitkeviciene replied, in words or effect, that the candidate did not have "the right profile," was "too old" and "his age is a problem."  Plaintiff protested that these considerations were, in words or effect, "illegal and

9

against company policy." Ms. Vaitkeviciene replied, among other things, in words or effect, "Look around. There's no one else in HQ or your department your age. They are all gone."

38.      In or around January 2007, at a Brand Integrity department meeting, Mr. Douros and Michael Fawlk, then-Vice President of Compliance and Brand Integrity of Philip Morris International, Inc., criticized certain private investigators who plaintiff supervised, who were all older than 50, as "no longer relevant" and as not having the "right profile."

39.      On or about February 1, 2007, Mr. Douros notified plaintiff that he was to be fired for performance-related reasons. Each of the purported performance-related reasons cited by Mr. Douros is false. Plaintiff refuted each one of those purported performance-related reasons during his conversation with Mr. Douros on or about February 1, 2007.

40.      On or about February 1, 2007, Michel Perron, Philip Morris International, Inc.'s Director of Human Resources, and Mr. Fawlk, then-Vice President of Compliance and Brand Integrity of Philip Morris International, Inc., advised plaintiff that his termination would take effect April 30, 2007. For medical reasons, plaintiff's effective termination date was extended to May 31, 2007 and, subsequently, to October 31, 2007.

41.      Upon information and belief, defendants terminated plaintiff's employment and took the above-referenced adverse actions against him because of his age and in retaliation for his complaints about age discrimination. Upon information and belief, after terminating plaintiff's employment, defendants reassigned plaintiff's job responsibilities to two less-experienced Brand Integrity Directors, each of whom was approximately 40 years old. One of those Brand Integrity Directors was based at defendants' offices in New York up until the time he assumed plaintiff's responsibilities.

10

42.     On or about February 16, 2007, plaintiff received an e-mail from Philip Morris International, Inc.'s Human Resources department announcing the elimination of 300 positions from Philip Morris International, Inc.'s Lausanne, Switzerland headquarters.  When plaintiff asked the Human Resources Department for the ages and nationalities of the persons who were to be terminated, the Human Resources Department refused to provide the information.

43.     On or about March 1, 2007, Mr. Perron told plaintiff that his discharge was due to, in words or effect, "restructuring." When plaintiff asked Mr. Perron how old he was, he replied, in words or effect, "49, I could be next."

44.     On or about March 16, 2007, in the presence of Kenneth Schoenholz, Philip Morris International Inc.'s Vice President, Legal, Ulrike Kabula, Philip Morris International, Inc.'s Vice President, Human Resources, told plaintiff several times that it was "Louis," who had decided to fire plaintiff and eliminate his position, as part of a restructuring to eliminate 300 employees.  Upon information and belief, when she referred to "Louis," Ms. Ulrike was referring to Louis Camilleri, Altria Group, Inc.'s Chairman and Chief Executive Officer, based in New York City.

45.     By letter dated April 5, 2007 to plaintiff, Mr. Fawlk stated that plaintiff's termination was for the reasons stated by Mr. Douros on February 1, 2007.

46.     Upon information and belief, each of the different and inconsistent reasons for plaintiff's termination proffered by defendants and referenced in paragraphs 39 through 45 above, is false and a pretext for discrimination and retaliation.

47.     By letter dated April 17, 2007, plaintiff, through his attorneys, complained to defendants about the unlawful discrimination and retaliation alleged herein.

11

48.     On or about May 3, 2007, Philip Morris International, Inc.'s authorization to conduct business in New York was voluntarily revoked.

49.     Since terminating plaintiff's employment and since receiving Claimant's post-termination complaints of discrimination and retaliation, referenced in paragraphs 42 through 47 herein, defendants have continued to unlawfully retaliate against plaintiff by interfering with his efforts to obtain new employment.  Among other things, defendants have contacted third-parties sponsoring or organizing conferences related to plaintiff's area of professional expertise, in order to discourage the third-parties from having plaintiff attend and/or speak at those conferences.

50.     As a result of defendants' unlawful conduct, plaintiff has suffered, and continues to suffer, irreparable injury, monetary damages and other damages, including, but not limited to, pain and suffering, emotional distress, humiliation, mental anguish, depression, anxiety, damage to reputation, and damage to physical health and well-being.

## AS AND FOR A FIRST CAUSE OF ACTION
### Age Discrimination in Violation of the ADEA

51.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 50 of the Complaint as though recited at length herein.

52.     Upon information and belief, defendants took the adverse actions described in paragraphs 26 through 50 of the Complaint because of plaintiff's age.

53.     Upon information and belief, defendants, by the actions described in paragraphs 26 through 50 of the Complaint, has unlawfully discriminated against plaintiff on the basis of age in violation of 29 U.S.C. § 623.

12

54.    Upon information and belief, defendants' violations of the ADEA described in paragraphs 26 through 50 of the Complaint were willful, within the meaning of 29 U.S.C. § 626(b).

55.    Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendants' discriminatory acts unless and until this Court grants the relief requested herein.

56.    No previous application has been made for the relief requested herein.

## AS AND FOR A SECOND CAUSE OF ACTION
### Age Discrimination in Violation of the NYSHRL

57.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 56 of the Complaint as if recited at length herein.

58.    Upon information and belief, the decision to terminate plaintiff's employment was made, reviewed and/or approved in New York.

59.    Upon information and belief, defendants took the adverse actions described in paragraphs 26 through 50 of the Complaint because of plaintiff's age.

60.    Defendants, by the discriminatory acts alleged in paragraphs 26 through 50, have violated the NYSHRL, N.Y. Exec. L. § 296(1)(a).

61.    Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendants' discriminatory acts unless and until this Court grants the relief requested herein.

62.    No previous application has been made for the relief requested herein.

## AS AND FOR A THIRD CAUSE OF ACTION
### Unlawful Retaliation in Violation of the ADEA

13

63.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 62 of the Complaint as if recited at length herein.

63.    Plaintiff engaged in activity protected under the ADEA, 29 U.S.C. § 623(d), in that, as described in paragraphs 26 through 50 of the Complaint, plaintiff opposed and complained to defendants about the discriminatory practices described in those paragraphs.

64.    Defendants were aware of the protected activity described in paragraphs 26 through 50 of the Complaint.

65.    Upon information and belief, defendants took the adverse actions referenced in paragraphs 26 through 50 of the Complaint, because plaintiff opposed and complained to defendants about the discriminatory practices described in paragraphs 26 through 50 of the Complaint.

66.    Defendants, through the actions referenced in paragraphs 26 through 50 of the Complaint, have unlawfully retaliated against plaintiff, in violation of the ADEA, 29 U.S.C. § 623(d).

67.    Upon information and belief, defendants' actions in violation of the ADEA described in paragraphs 26 through 50 of the Complaint were willful within the meaning of 29 U.S.C. § 626(b).

68.    Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendants' discriminatory acts unless and until this Court grants the relief requested herein.

69.    No previous application has been made for the relief requested herein.

14

## AS AND FOR A FOURTH CAUSE OF ACTION
### Unlawful Retaliation in Violation of the NYSHRL

70.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 69 of the Complaint as if recited at length herein.

71.    Upon information and belief, the decision to terminate plaintiff's employment was made, reviewed and/or approved in New York.

72.    As described in paragraphs 26 through 50 of the Complaint, plaintiff opposed and complained to defendants about the age discrimination described in those paragraphs.  Plaintiff thus engaged in activity protected under the NYSHRL of which defendants were aware.

73.    Upon information and belief, defendants took the adverse actions against plaintiff described in paragraphs 26 through 50 of the Complaint, because plaintiff opposed discriminatory practices described in those paragraphs.

74.    Defendants, through the actions referenced in paragraphs 26 through 50 of the Complaint, has unlawfully retaliated against plaintiff, in violation of the NYSHRL, N.Y. Exec. L. § 296(1)(e).

75.    Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendants' discriminatory acts unless and until this Court grants the relief requested herein.

76.    No previous application has been made for the relief requested herein.

**WHEREFORE**, plaintiff respectfully requests that this Court enter a judgment:

(a)    declaring that the acts and practices complained of herein are in violation of the ADEA and the NYSHRL;

(b)    enjoining and permanently restraining the violations alleged herein;

15

(c)     directing defendants to reinstate plaintiff to the position he would have occupied, but for defendants' discriminatory and retaliatory treatment, and to make him whole for all earnings and benefits he would have received but for defendants' discriminatory and retaliatory treatment, including, but not limited to, wages, bonuses, health insurance benefits, pension benefits, life and accident insurance benefits, stock options and all other benefits and compensation;

(d)     directing defendants to pay plaintiff liquidated damages for its willful acts of discrimination and retaliation, pursuant to the ADEA, 29 U.S.C. § 626(b);

(e)     directing defendants to pay plaintiff compensatory damages, including but not limited to, damages to reputation and damages for humiliation and mental anguish, and punitive damages, for its willful acts of retaliation, pursuant to ADEA, 29 U.S.C. § 626(b), incorporating 29 U.S.C. § 215(a)(3).

(f)     directing defendants to pay plaintiff compensatory damages, including, but not limited to, damages to reputation and damages for humiliation and mental anguish, as provided for in N.Y. Exec. L. § 297(4)(c) and (9);

16

(g)     awarding plaintiff the costs of this action together with reasonable attorneys' fees,

as provided for in 29 U.S.C. § 626(b); and

(h)     granting such other and further relief as this Court deems necessary and proper.


Dated: October 11, 2007
New York, New York


                          BROACH & STULBERG, LLP
                          Attorneys for Plaintiff


                          By:_____
                              Robert B. Stulberg (RS2734)
                          One Penn Plaza, Suite 2016
                          New York, New York 10119
                          (212) 268-1000


## DEMAND FOR JURY TRIAL

Plaintiff, by and through his above-signed counsel, hereby demands, pursuant to Rule

38(b) of the Federal Rules of Civil Procedure, a trial by Jury in the above-captioned action.

**Exhibit A**



# BI ORGANIZATION OVERVIEW

## Age Distribution

BI Avg Age — 38.4

Max

Min

| | Asia | BDC | CE/EE | LA&CAI | MEA | P I&S | PRC&HK | WE |
|---|---|---|---|---|---|---|---|---|
| AGE | 40.5 | 35.3 | 41 | 39.6 | 40.7 | 34.9 | 35.8 | 38.8 |

45
35
25

AP for  Brand Integrity
2005

Feb 01-02, 2005

**Exhibit B**

# BI ORGANIZATION OVERVIEW



**PMI 12+**

Total 12+ PMI Population In 2004: n.2116 (in 2003 = 1875 (2.9% increase))

- Average Age: 42 years (vs. in 2003 = 42.1)
- Average Time in Company 11.3 years (vs. in 2003 = 12.1)
- Average Time in Job 1.8 years (vs. in 2003 = 2)
- Cross Functional Moves 120 people

**BI 12+**

Total BI 12+ Population In 2004: n.25 (1% of PMI)

- Average Age: 44.1 years (+5% vs. PMI)
- Average Time In Company 11.8 years (+4% vs. PMI)
- Average Time In Job 1.4 years (-23 % vs. PMI)
- Cross Functional Moves 6 people (5% of PMI)

Feb 07-02, 2006

Author: Brand Integrity 2006

Exhibit C

# BI ORGANIZATION OVERVIEW



**ENTRIES & INT.MOVES '04**
n=34

**Total BI Population**
Jan 01, 2005:
n=59

**EXITS '04**
n=11

8% New Hires
(n=5)

20% Transfers-In
(n=12)

15% Promotions
(n=10)

10% Lateral Moves
(n=7)

13 Open Positions
(n=8)

Average Age
38.4 years

Avg Years Company (YC)
8.7 years

Avg Years in Job (YJ)
1.3 years

Grades 12+
(42%; n=25)

Expats
(34%; n=20)

8.5% Transfers-Out
(n=5)

10.2% Leaving PMI
(n=6), incl.:

6.8% Voluntary
(n=4)

3.4% Resignations
(n=2)

AD for Brand Function