**Exhibit C to Declaration of Shawn Patrick Regan**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
D'ARCY QUINN,                                              :
                                                           :
                              Plaintiff,                   :
                                                           :
        - against -                                        :   07-CV-8783 (LTS) (RLE)
                                                           :
ALTRIA GROUP, INC. (f/k/a PHILIP MORRIS                    :
COMPANIES), d/b/a itself, d/b/a ALTRIA                     :
CORPORATE SERVICES, INC. (f/k/a PHILIP                     :
MORRIS CORPORATE SERVICES, INC.), d/b/a                    :
PHILIP MORRIS INTERNATIONAL INC., d/b/a                    :
PHILIP MORRIS INTERNATIONAL                                :
MANAGEMENT, S.A.;                                          :
and                                                        :
PHILIP MORRIS INTERNATIONAL INC., d/b/a                    :
itself and d/b/a PHILIP MORRIS                             :
INTERNATIONAL MANAGEMENT, S.A.                             :
                                                           :
                              Defendants.                  :
------------------------------------------------------------X

### DECLARATION OF ANDRE REIMAN IN SUPPORT OF
### DEFENDANT PHILIP MORRIS INTERNATIONAL INC.'S MOTION TO DISMISS

Andre Reiman, pursuant to 28 U.S.C. § 1746, hereby declares:

1.      I make this Declaration in support of Philip Morris International Inc.'s ("PMI Inc.") motion to dismiss the complaint in this lawsuit. I have personal knowledge of the facts set forth in this Declaration.

2.      I understand that the relevant time period in this suit began no earlier than January 1, 2005 and ended no later than February 1, 2007. During the relevant time period and until June 30, 2007, I served as Senior Vice President, Trade Practices, for Philip Morris International Management S.A. ("PMI Management S.A.") in Lausanne, Switzerland. I am currently receiving continued compensation pursuant to the Severance Pay Plan for Salaried Employees and I continue to provide limited services to PMI Management S.A.

3.  In my capacity as Senior Vice President, Trade Practices for PMI Management S.A., I was the direct supervisor of Constantin Douros, Director of Brand Integrity for PMI Management S.A.

4.  Mr. Douros was the direct supervisor of Plaintiff D'Arcy Quinn.

5.  During my tenure as Senior Vice President, Trade Practices for PMI Management S.A., I was formally employed by PMI Global Services Inc. ("PMIGS") and was seconded to PMI Management S.A.

6.  During my tenure as Senior Vice President, Trade Practices for PMI Management S.A., I performed no duties or responsibilities for, nor exercised authority on behalf of, either PMIGS or PMI Inc. As reflected on the letterhead and business cards I used in this position, I acted exclusively on behalf of PMI Management S.A. As an officer of PMI Management S.A., I had authority to enter into contracts on behalf of PMI Management S.A., and I did so. I did not have authority to enter into agreements on behalf of PMIGS of PMI Inc., nor did I do so. It is my understanding that PMI Management S.A. reimbursed PMIGS for the full cost of my salary and benefits.

7.  By at least May 23, 2006, coincident with and as part of the anticipated restructuring of the Brand Integrity Department discussed below, I had personally made the decision to terminate the employment of Plaintiff D'Arcy Quinn. On that date, I requested Peter Paul Adriaansen, PMI Management S.A.'s Director of Human Resources, and Birute Vaitkeviciene, PMI Management S.A.'s Human Resources Manager, Trade Practices, to begin preparing a separation package for Plaintiff.

8.  My decision to terminate Plaintiff's employment with PMI Management S.A. was made in my capacity as Senior Vice President, Trade Practices for PMI Management S.A., and

did not require my consulting PMI Inc., PMIGS, Altria Group, Inc. or Louis Camilleri, Chairman and Chief Executive Officer of Altria Group, Inc.; nor did I consult with PMI Inc., PMIGS, Altria Group, Inc. or Louis Camilleri, Chairman and Chief Executive Officer of Altria Group, Inc. Neither PMI Inc., PMIGS, Altria Group, Inc. nor Louis Camilleri, Chairman and Chief Executive Officer of Altria Group, Inc. approved, or exercised veto power over, my decision. I did, however, consult with Plaintiff's direct supervisor, Constantin Douros before making the decision. I also consulted with Mr. Douros, Mr. Adriaansen, and Ms. Vaitkeviciene regarding the timing of notifying Plaintiff of his termination. Plaintiff ultimately was informed of his termination by his direct supervisor Mr. Douros.

9. My decision to terminate Plaintiff's employment with PMI Management S.A. had nothing to do with his age and I did not consider his age in making my decision. Rather, I decided to terminate Plaintiff's employment as part of a planned restructuring of PMI Management S.A.'s Brand Integrity Department. This restructuring sought both to reduce the number of Lausanne-based personnel and to align the Brand Integrity Department more closely with the organizational structure of the business units to which the Brand Integrity Department provided support. In order to accomplish these goals the Brand Integrity Department would be reorganized consistent with the four geographic regions used by the business units: (i) European Union; (ii) Eastern Europe, Middle East and Africa; (iii) Asia; and (iv) Latin America and Canada. This reorganization required transferring of certain countries under Plaintiff's scope of responsibility within the Brand Integrity Department to the Director Brand Integrity for the European Union, and combining the remaining countries with markets under the responsibility of Director Brand Integrity for Eastern Europe, Middle East and Africa. This left the Brand Integrity Department with one fewer Director-level position, but was, in my view, necessary to

align the Brand Integrity Department more closely with the business units for which it provided support.

10.     I understand Mr. Quinn to have also alleged that his termination was a result of a complaint, which he alleges to have made in January 2006, about alleged age discrimination toward two staff members. To my knowledge, Mr. Quinn never made such a complaint. Moreover, as discussed above, the termination of Plaintiff's employment was not in retaliation for, or at all connected to, any alleged complaint he made about age discrimination or any other compliance-related issues.

11.     Plaintiff's termination of employment, which had been decided upon in May 2006, was not part of the separate reduction in force announced in February 2007. I played no part in the latter reduction.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on January /2, 2008, at Summerland Key, Florida.

_____
Andre Reiman