UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
D'ARCY QUINN,                                          :
                                                       :
                                     Plaintiff,        :
                                                       :
                 - against -                           :          07-CV-8783 (LTS) (RLE)
                                                       :
ALTRIA GROUP, INC. (f/k/a PHILIP MORRIS                :
COMPANIES), d/b/a itself, d/b/a ALTRIA                 :
CORPORATE SERVICES, INC. (f/k/a PHILIP                 :
MORRIS CORPORATE SERVICES, INC.), d/b/a                :
PHILIP MORRIS INTERNATIONAL INC., d/b/a                :
PHILIP MORRIS INTERNATIONAL                            :
MANAGEMENT, S.A.;                                      :
and                                                    :
PHILIP MORRIS INTERNATIONAL INC., d/b/a                :
itself and d/b/a PHILIP MORRIS                         :
INTERNATIONAL MANAGEMENT, S.A.                         :
                                                       :
                                     Defendants.       :
-------------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT PHILIP MORRIS INTERNATIONAL INC.'S
## MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Shawn Patrick Regan, Esq.
Stephen R. Blacklocks, Esq.
Jacob F.M. Oslick, Esq.
HUNTON & WILLIAMS LLP
200 Park Avenue
New York, New York  10166
(212) 309-1000

*Attorneys for Philip Morris International Inc.*

## Table of Contents

Table of Authorities .................................................................................................... ii

Preliminary Statement ................................................................................................ 1

Factual Background .................................................................................................... 1

   1.  Plaintiff was employed by PMI Management S.A. ......................................... 2

   2.  PMI Inc. and PMI Management S.A. are separate corporate entities............. 3

   3.  PMI Inc. did not terminate Plaintiff's employment....................................... 5

   4.  PMI Inc. did not control PMI Management S.A............................................. 6

Applicable Legal Standards ....................................................................................... 7

Argument ................................................................................................................... 8

I.   PLAINTIFF'S ADEA CLAIM SHOULD BE DISMISSED BECAUSE PMI
     INC. NEITHER EMPLOYED PLAINTIFF NOR CONTROLLED  PMI
     MANAGEMENT S.A., HIS EMPLOYER ......................................................... 8

   A.  Plaintiff was not employed by a U.S. employer. ........................................... 8

   B.  PMI Inc. did not control PMI Management S.A............................................. 9

      1.  Centralized control of labor relations         9

          (a)  PMI Management S.A. made the decision to terminate
                Plaintiff's employment. ..................................................... 10

          (b)  PMI Inc. did not make the decision to terminate Plaintiff's
                employment. ....................................................................... 10

          (c)  PMI Inc. does not control PMI Management S.A.'s labor
                relations.............................................................................. 12

      2.  Interrelation of operations..................................................................... 13

      3.  Common management and centralized ownership or financial control................ 13

II.  PLAINTIFF'S NYSHRL CLAIM SHOULD ALSO BE DISMISSED. ............................. 15

   A.  The Court cannot exercise supplemental jurisdiction  over Plaintiff's
      state law claims............................................................................................. 15

   B.  The extraterritorial application of New York's discrimination law is
      beyond the subject matter jurisdiction of this Court.................................... 15

Conclusion ................................................................................................................. 17

## Table of Authorities

**Cases**

*Balance v. Energy Transportation Corp.*,
  00-cv-9180 (LMM), 2001 WL 1246586  (S.D.N.Y. Oct. 11, 2001) ...................................16

*Balut v. Loral Elec. Sys.*,
  988 F.Supp. 339 (S.D.N.Y. 1997), *aff'd*, 166 F.3d 1199 (2d Cir. 1998)..........................9, 14

*Bragg v. Emmis Broadcasting Corp.*,
  95-cv-10310 (DAB), 1998 WL 730339 (S.D.N.Y. Oct. 19, 1998) ................................12 n5

*Ceaser v. Interoute Telecommunications*, Inc.,
  00-cv-8692 (DLC), 2001 WL 648946 (S.D.N.Y. June 12, 2001 ...........................................15

*Correspondent Services Corp. v. First Equities Corp. of Florida*,
  338 F.3d 119 (2d Cir. 2003) .......................................................................................15

*Darden v. DaimlerChrysler North America Holding Corp.*,
  191 F.Supp.2d 382 (S.D.N.Y. 2002) ..........................................................................3

*Diggs v. Dynegy, Inc.*,
  03-cv-3223, 2003 WL 22794558 (N.D.Ill. Nov. 24, 2003)...............................12 n5

*Duffy v. Drake Beam Morin*,
  96-cv-5606 (MBM), 1998 WL 252063 (S.D.N.Y. May 19, 1998) .......................................16

*Ennis v. Tyco Intern. Ltd.*,
  02-cv-9070 (TPG), 2004 WL 548796 (S.D.N.Y. Mar. 18, 2004) .........................................11

*Europe and Overseas Commodity Traders, S.A. v. Banque Paribas London*,
  147 F.3d 118 (2d Cir.1998) ..........................................................................................7

*Gizzo v. I.N.S.*,
  510 F.Supp.2d 210 (S.D.N.Y. 2007) ............................................................................8

*Herman v. Blockbuster Entertainment Group*,
  18 F.Supp.2d 304 (S.D.N.Y. 1998), *aff'd* 182 F.3d 899 (Table), 1999 WL
  385765 (2d Cir. 1999) (unpublished) .....................................................................13, 14

*In re Terrorist Attacks on September 11, 2001*,
  349 F.Supp.2d 765 (S.D.N.Y. 2005) ..........................................................................16

*Iwankow v. Mobil Crop.*,
  541 N.Y.S.2d 428 (1st Dep't. 1989)...........................................................................15

*Jazini v. Nissan Motor Co., Ltd.*,
  148 F.3d 181 (2d Cir. 1998) ........................................................................................16

*Levine v. Readers Digest Ass'n Inc.*,
  06-cv-590 (LMS), 2007 WL 4241925 (S.D.N.Y. Nov. 30, 2007) ...................................11 n5

*Luckett v. Bure*,
  290 F.3d 493 (2d Cir. 2002) ........................................................................................7

*Lusk v. Foxmeyer Health Corp,*
  129 F.3d 773 (5th Cir. 1997) ................................................................14

*Melnitzky v. HSBC Bank USA,*
  06-cv-13526 (JGK), 2007 WL 1159639 (S.D.N.Y. April 18, 2007)...................7

*Meng v. Ipanema Shoe Corp.,*
  73 F.Supp.2d 392 (S.D.N.Y. 1999) .......................................10 n4, 13, 14

*Morelli v. Cedel,*
  141 F.3d 39 (2d Cir. 1998) ....................................................................7

*Murray v. Miner,*
  74 F.3d 402 (2d Cir. 1996) ....................................................................9

*North South Fin. Corp. v. Al-Turki,*
  100 F.3d 1046 (2d Cir. 1996) ................................................................7

*Papa v. Katy Industries, Inc.,*
  166 F.3d 937 (7th Cir. 1999) ...........................................................12 n5

*Robinson v. Government of Malaysia,*
  269 F.3d 133 (2d Cir. 2001) ..................................................................7

*Schade v. Coty, Inc.,*
  00-cv-1568 (JGK), 2001 WL 709258 (S.D.N.Y. June 25, 2001)...........10, 11, 14

*Thomas v. Texaco, Inc.,*
  998 F.Supp. 368 (S.D.N.Y. 1998) ........................................................15

*Velez v. Novartis Pharmaceuticals Corp.,*
  244 F.R.D. 243 (S.D.N.Y. 2007) ....................................................*passim*

*Woodell v. United Way of Dutchess County,*
  357 F.Supp.2d 761 (S.D.N.Y. 2005) .......................................................9

*Zappia Middle East Const. Co. Ltd. v. Emirate of Abu Dhabi,*
  215 F.3d 247 (2d Cir. 2000). ..................................................................7

## Statutes

28 U.S.C. § 1367..................................................................................15

29 U.S.C. § 621....................................................................................1

29 U.S.C. § 623...............................................................................6, 8, 9

Fed. R. Civ. P. 12(b)........................................................................1, 17

N.Y. Exec. L. § 296........................................................................1, 15

N.Y. Exec. L. § 298-a.........................................................................15

## Other Authorities

2 Daniel R. Coquillette *et al.*, *Moore's Federal Practice 3d*, § 12.30[4]....................8

Defendant Philip Morris International Inc., by and through its undersigned counsel, respectfully submits this Memorandum of Law in Support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

## Preliminary Statement

Plaintiff's complaint must be dismissed because this Court lacks subject matter jurisdiction over Plaintiff's discrimination and retaliation claims brought under the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.,* and New York State's Human Rights Law, N.Y. Exec. L. § 296.

The facts are beyond dispute that Plaintiff was employed in Switzerland by a Swiss corporation -- Philip Morris International Management S.A. ("PMI Management S.A.") -- and that Defendant Philip Morris International Inc. ("PMI Inc.") did not exercise control over PMI Management S.A. PMI Inc., a Virginia corporation and the indirect parent of PMI Management S.A., did not make the decision to terminate Plaintiff's employment; did not control PMI Management S.A.'s labor relations; and did not exercise day-to-day control over PMI Management S.A.

Because Plaintiff cannot demonstrate the "extraordinary circumstances" necessary to make a U.S. parent liable for an allegedly wrongful termination by its foreign subsidiary, the Court lacks subject matter jurisdiction over Plaintiff's claims against PMI Inc.[1]

## Factual Background

Plaintiff's assertion of jurisdiction in this case is based on allegations that are demonstrably false. The actual facts -- attested to here in the declarations of Ann Marie

---

[1]    Defendant Altria Group, Inc. is separately submitting a motion to dismiss Plaintiff's claims against it.

Kaczorowski, a Director of PMI Inc., Andre Reiman, Senior Vice President, Trade Practices, for PMI Management S.A., and Peter Paul Adriaansen, Director of Human Resources for PMI Management S.A. -- clearly demonstrate: (i) that Plaintiff was employed by PMI Management S.A.; (ii) that PMI Inc. and PMI Management S.A. are separate corporate entities; (iii) that PMI Inc. did not terminate Plaintiff's employment; and (iv) that PMI Inc. did not control PMI Management S.A.

### 1.     Plaintiff was employed by PMI Management S.A.

The Complaint alleges that Plaintiff was employed "by defendants in Switzerland." (Compl. ¶ 9). In fact, Plaintiff was employed by PMI Management S.A. and worked out of PMI Management S.A.'s office in Lausanne, Switzerland. (*See* Declaration of Peter Paul Adriaansen ¶ 3). Throughout his employment by PMI Management S.A., Plaintiff was paid by PMI Management S.A., received benefits from PMI Management S.A. under Swiss law, contributed to a Swiss pension and Swiss Social Security, and paid Swiss income taxes. (*Id.* ¶ 5). PMI Management S.A. managed all human resources related communications, tax withholdings, incentive compensation, and other local benefits and personnel administration with respect to Plaintiff. (*Id.*). Since 2002, Plaintiff received an annual Swiss Certificat de Salaire pour la Declaration d'Impôt (the Swiss equivalent of a W-2 earnings form) from PMI Management S.A. that conspicuously identified PMI Management S.A. as his employer. (*Id.* ¶ 4 & Exhibit 1). Neither PMI Inc. nor PMI Management S.A. contributed to U.S. Social Security on Plaintiff's behalf. (*Id.* ¶ 5; Declaration of Ann Marie Kaczorowski ¶ 14).

2.    **PMI Inc. and PMI Management S.A. are separate corporate entities.**

The Complaint names two defendants -- Altria Group, Inc. and PMI Inc.  But

Plaintiff also lists several other entities through which, he contends, these two defendants "do

business."  Thus, after naming PMI Inc., he says: "d/b/a itself and d/b/a Philip Morris

International Management S.A."  Many of Plaintiff's allegations lump together all the entities

the caption lists as "defendants."  For example, Plaintiff alleges he commenced employment

"with defendants" (Compl. ¶ 23); that "defendants" discriminated against him (*id.* ¶ 25); that

"defendants" terminated other employees because of their age (*id.* ¶ 29); and that "defendants"

wrongfully terminated his employment (*id.* ¶ 41).  But Plaintiff's caption should not obscure

the fact that each of these entities is a separate legal entity.  *See, e.g.*, *Darden v.*

*DaimlerChrysler North America Holding Corp.*, 191 F.Supp.2d 382, 395 (S.D.N.Y. 2002)

(under the ADEA and Title VII, "as a matter of policy, courts presume the separateness of

legally distinct corporate entities," a presumption overruled only if sufficient facts support

"collaps[ing]" the two entities into a "single employer").

PMI Inc. is a Virginia corporation.  (Kaczorowski Decl. ¶ 2).  For part of the

time period relevant here,[2] PMI Inc. was incorporated in Delaware.  (*Id.*)  PMI Inc. has been a

holding company, the parent of numerous other holding companies and operating subsidiaries

around the world.  (*Id.*).  PMI Inc. manufactures no products, and provides no services to

customers.  (*Id.*).  It acts only through its directors and officers or authorized non-employee

---

[2]    The Complaint alleges discriminatory activity starting around the beginning of 2005.
(Compl. ¶ 27).  Unless otherwise noted, the facts described herein have been true since at least
January 1, 2005 through February 1, 2007 when Plaintiff claims he was informed of his
termination.  (Compl. ¶¶ 39, 40).

agents and representatives.   It derives income from dividends received from its subsidiaries and interest.  (*Id.*).

As a holding company, PMI Inc. appoints officers and distributes dividends on its earnings to its parent-shareholder.  (*Id.* ¶ 3).  PMI Inc. has entered into credit facility agreements with lending syndicates for extensions of credit to itself and its wholly-owned subsidiaries; it has entered into a strategic trademark license and distribution cooperation agreement with China National Tobacco Company; and it has entered into an agreement with the European Community relating to certain sales and distribution practices designed to combat cigarette contraband and counterfeiting activity.  (*Id.*).

PMI Inc. does not control its subsidiaries' day-to-day decisions, either in labor relations or operational areas.  (*Id.*).  PMI Inc. does not make, approve, or exercise veto power over, decisions concerning the hiring or firing of any employees at any of its subsidiaries. (*Id.*).

PMI Management S.A. is a Swiss corporation, with its offices in Lausanne, Switzerland; it is a separate and distinct legal entity from PMI Inc.  (*Id.* ¶ 6).  It is an indirect subsidiary of PMI Inc.; there are four other corporations (two Swiss and two U.S.) between PMI Management S.A. and PMI Inc. in the corporate structure.  (*Id.* ¶ 7).  PMI Management S.A. provides management and professional services to PMI Inc. and numerous subsidiaries of PMI Inc., pursuant to service agreements.  (*Id.* ¶ 6).

PMI Inc. does not conduct interrelated operations with PMI Management S.A. It has not commingled funds, bank accounts, accounts receivable, or inventories with PMI Management S.A.  (*Id.* ¶ 12).  It has not maintained PMI Management S.A.'s books or prepared or filed its tax returns.  (*Id.*).  And it has not paid PMI Management S.A.'s expenses

or signed its paychecks. (*Id.*).  PMI Inc. and PMI Management S.A. do not share common

directors and officers to a degree beyond what is ordinary in a parent-subsidiary relationship.

(*See id.* ¶ 13).

### 3.    PMI Inc. did not terminate Plaintiff's employment.

The Complaint alleges that "defendants" terminated Plaintiff's employment.

(Compl. ¶ 41).  This also is incorrect:  Plaintiff's employment was terminated by his employer

-- PMI Management S.A.  (Declaration of Andre Reiman ¶¶ 7, 8; Kaczorowski Decl. ¶ 15).

PMI Inc. did not do or say anything to bring about Plaintiff's termination by PMI Management

S.A.  (Kaczorowski Decl. ¶ 15).

The decision to terminate Plaintiff's employment was made by Andre Reiman

in his capacity as Senior Vice President, Trade Practices, for PMI Management S.A.  (Reiman

Decl. ¶¶ 7, 8).  Reiman was the direct supervisor of Constantin Douros, PMI Management

S.A.'s Director for Brand Integrity; Mr. Douros was Plaintiff's supervisor.  (*Id.* ¶¶ 3, 4).

Although Mr. Reiman was formally employed by PMI Global Services Inc. ("PMIGS"), he

was seconded to PMI Management S.A.  (*Id.* ¶ 5).  Indeed, Mr. Reiman had no duties to,

responsibilities for, or authority to act on behalf of, either PMI Inc. or PMIGS Inc.  (*Id.* ¶ 6).

As reflected on the letterhead and business cards he used in this position, Reiman acted

exclusively on behalf of PMI Management S.A.  (*Id.*).  He had authority to enter into contracts

on behalf of PMI Management S.A., and he did so.  (*Id.*).  He did not have authority to enter

into agreements on behalf of PMIGS, nor did he do so.  (*Id.*).  PMI Management S.A.

reimbursed PMIGS for the full cost of Reiman's salary and benefits.  (*Id.*).

Reiman decided to terminate Plaintiff's employment with PMI Management

S.A. without consulting PMI Inc., PMIGS, Altria Group, Inc. or Altria Group, Inc.'s Chairman

and Chief Executive Officer Louis Camilleri. (*Id.* ¶ 8). Neither PMI Inc., PMIGS, Altria

Group, Inc. nor Altria Group, Inc.'s Chairman and Chief Executive Officer Louis Camilleri

approved or exercised veto power over Reiman's decision. (*Id.*; Kaczorowski Decl. ¶ 15).[3]

Plaintiff was informed of his termination by his direct supervisor, Mr. Douros. (Compl. ¶ 39).

### 4.    PMI Inc. did not control PMI Management S.A.

The Complaint makes the conclusory allegation that PMI Inc. "has controlled

[PMI Management S.A.] within the meaning of 29 U.S.C. 623." (Compl. ¶ 20). The

Complaint further alleges that PMI Inc. "has made, reviewed and approved decisions

concerning, among other things, personnel matters (including, without limitation, promotions

and terminations), regulatory compliance matters and other matters related to labor relations

and operations, for [PMI Management S.A.]." (*Id.* ¶ 21).

None of these allegations is supported by the facts. PMI Inc. has no human

resources department. (Kaczorowski Decl. ¶ 11). Nor does it control PMI Management S.A.'s

labor relations. (*Id.* ¶ 11). Indeed, PMI Inc. does not make decisions concerning the hiring or

firing of any employees for any of its subsidiaries. (*Id.*). It has not made, approved, or

exercised veto power over, its subsidiaries' personnel decisions. (*Id.*).

In labor relations, as in other matters, PMI Inc.'s operating subsidiaries conduct

their own businesses and manage themselves in accordance with their particular business

requirements and operations and the specific legal requirements of the jurisdictions in which

---

[3]    Before making the decision, Reiman consulted with Plaintiff's direct supervisor, Mr.
Douros. (Reiman Decl. ¶ 8). The Complaint identifies a number of persons who, it alleges,
worked for PMI Inc. and who, it alleges, were involved in Plaintiff's termination or made
statements alleged to be relevant to Plaintiff's claims. (Compl. ¶¶ 31, 32, 34, 37, 38, 40, 44).
In fact, none of these persons was employed by PMI Inc. (Kaczorowski Decl. ¶ 9).

they operate. (*Id.* ¶ 4). Operating subsidiaries have their own officers and directors who are responsible for the management and operations of that subsidiary, including its personnel. (*Id.* ¶ 4). Consistent with the functions of a shareholder, PMI Inc. does not control its subsidiaries' day-to-day decisions, either in labor relations or operational areas. (*Id.* ¶ 3).

### Applicable Legal Standards

A challenge to a plaintiff's attempt to apply a federal statute extraterritorially is properly brought as an objection to the court's subject matter jurisdiction. *E.g. Morelli v. Cedel*, 141 F.3d 39, 41-44 (2d Cir. 1998) (deciding motion to dismiss under Rule 12(b)(1) when plaintiff sought to apply ADEA to foreign employer); *North South Fin. Corp. v. Al-Turki*, 100 F.3d 1046 (2d Cir. 1996) (no jurisdiction over claim alleging extraterritorial application of RICO statute); *Europe and Overseas Commodity Traders, S.A. v. Banque Paribas London*, 147 F.3d 118, 132 (2d Cir. 1998) (no jurisdiction over claim alleging extraterritorial application of securities laws).

When a defendant presents evidence challenging the factual basis for the plaintiff's assertion of subject matter jurisdiction, the plaintiff bears the burden of proving jurisdictional facts by a preponderance of the evidence. *See Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002). In meeting this burden, the plaintiff "cannot rest on conclusory allegations that factual disputes exist." *Zappia Middle East Const. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

Where jurisdictional facts are in dispute, "the court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists." *Melnitzky v. HSBC Bank USA*, 06-cv-13526 (JGK), 2007 WL 1159639 at *5 (S.D.N.Y. April 18, 2007); *see also Robinson v.*

*Government of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001). In evaluating the evidence, the

Court is "not to draw inferences favorable to the party asserting jurisdiction." *Gizzo v. I.N.S.*,

510 F.Supp.2d 210, 211 (S.D.N.Y. 2007). *See, generally*, 2 Daniel R. Coquillette *et al.*,

*Moore's Federal Practice 3d*, § 12.30[4].

<u>**Argument**</u>

**I.    PLAINTIFF'S ADEA CLAIM SHOULD BE DISMISSED BECAUSE PMI INC. NEITHER EMPLOYED PLAINTIFF NOR CONTROLLED PMI MANAGEMENT S.A., HIS EMPLOYER.**

Plaintiff's ADEA claim against PMI Inc. is beyond the extraterritorial

jurisdiction of this court. The ADEA prohibits an employer from "discharg[ing] any individual

or otherwise discriminat[ing] against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's age." 29 U.S.C.

§ 623(a). When a United States citizen is employed abroad, as Plaintiff was (Compl. ¶ 9), the

ADEA extends extraterritorially only if the individual was employed by either (a) a U.S.

employer or (b) a foreign corporation that is "controlled" by a U.S. employer. 29 U.S.C.

§ 623(h). Here, PMI Inc. neither employed Plaintiff nor controlled PMI Management S.A.,

Plaintiff's foreign employer.

**A.    <u>Plaintiff was not employed by a U.S. employer.</u>**

Plaintiff alleges that he was employed by "defendants," a term he defines to

include PMI Inc. (Compl. ¶¶ 1, 9). But Plaintiff was not employed by PMI Inc. (Kaczorowski

Decl. ¶ 14). Rather, Plaintiff was employed by PMI Management S.A., a Swiss corporation.

(*Id.* ¶ 6; Adriaansen Decl. ¶ 3). It follows that PMI Inc. could be liable to Plaintiff only if PMI

Inc. controlled PMI Management S.A. pursuant to § 623(h).

**B.**     **PMI Inc. did not control PMI Management S.A.**

The Complaint alleges that PMI Inc. "has controlled [PMI Management S.A.] within the meaning of 29 U.S.C. 623." (Compl. ¶ 20). But the evidence shows that PMI Inc. does not control PMI Management S.A.

As a threshold matter, it is only in "extraordinary circumstances" that employees of a subsidiary are considered to be employees of the parent for purposes of the ADEA. *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996). Consequently, there is "a strong presumption that a parent is not the employer of its subsidiary's employees." *Balut v. Loral Elec. Sys.*, 988 F.Supp. 339, 344 (S.D.N.Y. 1997), *aff'd*, 166 F.3d 1199 (2d Cir. 1998). This presumption should be applied when considering the four factors set out in the ADEA for determining control: (1) the interrelation of the companies' operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control. 29 U.S.C. § 623(h).

Of these, the "most important element . . . is whether the two enterprises exhibit centralized control of labor relations." *Velez v. Novartis Pharmaceuticals Corp.*, 244 F.R.D. 243, 250 (S.D.N.Y. 2007) (citation omitted).

**1.**     **Centralized control of labor relations**

Centralized control of labor relations exists only where "[the] defendant had immediate control over another company's employees, and even more importantly, over the particular employee alleging discrimination." *Woodell v. United Way of Dutchess County*, 357 F.Supp.2d 761, 767 (S.D.N.Y. 2005) (citation omitted). The "critical question" is "what entity made the final decision regarding employment matters related to the person claiming

discrimination?" *Velez,* 244 F.R.D. at 25 (citation omitted); *accord Schade v. Coty, Inc.,* 00-cv-1568 (JGK), 2001 WL 709258 at *8 (S.D.N.Y. June 25, 2001).

### (a) PMI Management S.A. made the decision to terminate Plaintiff's employment.

The answer to the "critical question" of who made the "final decision" to terminate Plaintiff's employment is that PMI Management S.A., acting through Andre Reiman, made that decision. As PMI Management S.A.'s Senior Vice President for Trade Practices, Mr. Reiman was in a position to make this decision because he was responsible for the operations of PMI Management S.A.'s Brand Integrity Department, of which Plaintiff was a member. (Compl. ¶ 24). Although Reiman was formally employed by PMIGS, his actions as Senior Vice President, including his decision to terminate Plaintiff's employment, were taken solely on behalf of PMI Management S.A. In fact, as discussed above (*see* pp. 5-6), Reiman had no duties to, responsibilities for, or authority to act on behalf of, either PMIGS or PMI Inc. (Reiman Decl. ¶ 6). It follows that PMI Management S.A. was "the entity [that] made the final decision" regarding Plaintiff's employment. *Velez,* 244 F.R.D. at 25.[4]

### (b) PMI Inc. did not make the decision to terminate Plaintiff's employment.

Andre Reiman made the decision to terminate Plaintiff's employment as part of a restructuring designed to reduce PMI Management S.A. personnel and align the Brand

---

[4]     In *Meng v. Ipanema Shoe Corp.*, 73 F.Supp.2d 392 (S.D.N.Y. 1999), a former employee brought suit against her employer and its parent corporation. The Court held that because the decision-makers had been seconded from the parent corporation to the subsidiary, and the subsidiary had reimbursed the parent for the decision-makers' salaries and benefits, "there is no evidence that these officers acted for or on behalf of [the parent] . . . or that [the parent] controlled [the subsidiary] through their actions." *Id.* at 404. Moreover, in *Meng*, the decision-makers were seconded from the parent itself; here, Reiman was seconded to PMI Management S.A. from PMIGS, a subsidiary of PMI Inc., and not from the parent -- PMI Inc.

Integrity Department more closely with the organizational structure of the business.  (Reiman

Decl. ¶¶ 7, 8, 9).  Reiman was not employed by PMI Inc.  (*Id.* ¶ 5).  Nor were any of the

individuals identified in the Complaint as employees of PMI Inc. in fact employed by PMI Inc.

(Compl. ¶¶ 31, 32, 34, 37, 38, 40, 44; Kaczorowski Decl. ¶ 9).  The Complaint also alleges that

PMI Inc.'s human resources department announced the layoff that allegedly included Plaintiff.

(Compl. ¶ 42).  But PMI Inc. does not have a human resources department.  (Kaczorowski

Decl. ¶ 11).

        Because PMI Inc. did not bring about or exercise control over Plaintiff's

termination, it did not have "centralized control of labor relation," and so should be dismissed

from this suit.  *Velez*, 244 F.R.D. at 251 (parent not liable for subsidiary's alleged

discrimination because "plaintiffs have pointed to no evidence that any [parent] officer has any

control whatsoever over the conditions of employment at [the subsidiary]"); *Ennis v. Tyco

Intern. Ltd.,* 02-cv-9070 (TPG), 2004 WL 548796 at *4 (S.D.N.Y. Mar. 18, 2004) (parent

holding company not liable for subsidiary's alleged discrimination and retaliation when "[n]o

allegations of wrongdoing have been made by [plaintiff] against [parent's] personnel"); *Schade

v. Coty, Inc.*, 2001 WL 709258 at *8 (S.D.N.Y. June 25, 2001.[5]

---

[5]     The facts here are materially different from those in *Levine v. Readers Digest Ass'n Inc.*, 06-cv-590 (LMS), 2007 WL 4241925 (S.D.N.Y. Nov. 30, 2007), where the Court denied the parent's motion for summary judgment because evidence indicated:  (1) that the parent had formally approved the restructuring that led to the plaintiff's termination and was involved with plaintiff's termination in particular; and (2) that a senior human resources executive from the parent personally investigated plaintiff's complaints of age and religious discrimination. *Id.* at 2-3, 7-8.  Neither of these facts exists here.

    Moreover, *Levine* cites no authority to support its holding that a parent company's mandating of a reduction-in-force raises a triable issue of fact regarding centralized control of labor relations, even where the subsidiary "made the final decision," *Velez*, 244 F.R.D. at 25, regarding which employees to terminate.  The case law generally is to the contrary.  *See Bragg*

### (c)  PMI Inc. does not control PMI Management S.A.'s labor relations.

In determining whether there was centralized control of labor relations, a court finally should consider "tasks such as handling job applications, approving personnel status reports, and exercising veto power over major employment decisions." *Velez,* 244 F.R.D. at 250. The Complaint alleges in conclusory terms that PMI Inc. "made, reviewed and approved decisions . . . related to labor relations and operations" at PMI Management S.A. (Compl. ¶ 21). But the evidence shows that PMI Inc. did not make, approve or exercise veto power over PMI Management S.A.'s personnel decisions or performance evaluations; did not hire, fire, promote, demote, evaluate, compensate, or discipline any PMI Management S.A.'s employees (including Plaintiff); did not conduct employee evaluations of PMI Management S.A.'s employees (including Plaintiff); did not promulgate PMI Management S.A.'s employee policies; and did not consider or approve PMI Management S.A.'s job applications or personnel status reports. (Kaczorowski Decl. ¶ 11). PMI Management S.A. has its own officers and directors, and these officers and directors are responsible for the management and operations of PMI Management S.A., including its personnel. (*Id.* ¶ 4).

---

*v. Emmis Broadcasting Corp.*, 95-cv-10310 (DAB), 1998 WL 730339 at *6 (S.D.N.Y. Oct. 19, 1998) (finding no basis for claiming control notwithstanding that parent's executives visited subsidiary to discuss downsizing); *Papa v. Katy Industries, Inc.*, 166 F.3d 937, 942 (7th Cir. 1999) (refusing to find integrated enterprise because, although "[the parent] in a sense 'caused' the firing of [plaintiff] by ordering [subsidiary] to curtail its operations . . . . there is no suggestion that [parent] . . . was responsible for [plaintiff] being selected for layoff"); *Diggs v. Dynegy, Inc.*, 03-cv-3223, 2003 WL 22794558 at *4 (N.D.Ill. Nov. 24, 2003) ("Even if Dynegy did direct the lay off, Diggs has not even suggested that Dynegy had any input into whether Diggs would be one of the employees selected for the layoff.").

2.    **Interrelation of operations**

The next element of the four-part test for control is whether the parent's and subsidiary's operations were interrelated. Courts have looked to the following indicia of interrelated operations: "(1) whether the parent was involved directly in the subsidiary's daily decisions relating to production, distribution, marketing, and advertising; (2) whether the two entities shared employees, services, records and equipment; (3) whether the entities commingled bank accounts, accounts receivable, inventories, and credit lines; (4) whether the parent maintained the subsidiary's books; (5) whether the parent issued the subsidiary's paychecks; and (6) whether the parent prepared and filed the subsidiary's tax returns." *Meng*, 73 F.Supp.2d at 403; *Herman v. Blockbuster Entertainment Group*, 18 F.Supp.2d 304, 309 (S.D.N.Y. 1998), *aff'd* 182 F.3d 899 (Table), 1999 WL 385765 (2d Cir. 1999) (unpublished).

Plaintiff does not allege facts that plausibly suggest that the operations of PMI Inc. and PMI Management S.A. were interrelated in these ways; moreover, the actual facts show that they were not. PMI Inc. had no involvement with PMI Management S.A.'s daily decisions as to manufacturing, distribution, marketing or advertising; it did not share employees with PMI Management S.A.; it did not have common records with PMI Management S.A.; it did not commingle funds, bank accounts, accounts receivable, or inventories with PMI Management S.A.; it did not maintain PMI Management S.A.'s books, or prepare or file its tax returns; and it did not pay PMI Management S.A.'s expenses or sign PMI Management S.A.'s paychecks. (Kaczorowski Decl. ¶ 12).

3.    **Common management and centralized ownership**
       **or financial control**

The remaining elements of the four-part test -- common management and ownership or financial control -- "are less important" because "they represent ordinary aspects

of the parent-subsidiary relationship." *Schade*, 2001 WL 709258 at *9 (*quoting Meng*, 73 F. Supp. 2d at 403).

During the relevant period, PMI Inc. and PMI Management S.A. had only one director in common. (Kaczorowski Decl. ¶ 13). During the same period, among the several dozen PMI Management S.A. officers, only four were also officers of PMI Inc. (*Id.*). Courts have declined to find common management given similar overlap of officers and directors. *See, e.g., Velez*, 244 F.R.D. at 254 (no common management despite two corporations having three directors in common, and a director of the parent serving as an officer of the subsidiary); *Herman,* 18 F.Supp.2d at 312-313 (no common management when corporations shared a chief executive officer and chief financial officer); *Lusk v. Foxmeyer Health Corp*, 129 F.3d 773, 779-80 (5th Cir. 1997) (finding lack of common management where three individuals who held executive positions in both parent and subsidiary participated in reduction in force, as plaintiff failed to present evidence that the three individuals were acting as executives of the parent rather than the subsidiary).

*      *      *      *      *

There is a "strong presumption" against holding a parent company liable for employment claims brought by its subsidiary's employees. *Balut v. Loral Elec. Sys.*, 988 F.Supp. at 344. The facts here show that PMI Inc. did not employ Plaintiff and did not exercise the degree of control over Plaintiff's employer, PMI Management S.A., required to overcome this strong presumption. The Court therefore lacks jurisdiction over Plaintiff's ADEA claim against PMI Inc.

14

## II.    PLAINTIFF'S NYSHRL CLAIM SHOULD ALSO BE DISMISSED.

### A.    The Court cannot exercise supplemental jurisdiction over Plaintiff's state law claims.

Plaintiff also seeks relief under New York State's Human Rights Law, N.Y. Exec. L. § 296.  But without subject matter jurisdiction over Plaintiff's ADEA claim, the Court cannot exercise 28 U.S.C. § 1367(a) supplemental jurisdiction over Plaintiff's state law claim. *See Correspondent Services Corp. v. First Equities Corp. of Florida*, 338 F.3d 119, 126 n.7 (2d Cir. 2003).    Because the Court does not have subject matter jurisdiction over Plaintiff's ADEA claim, Plaintiff's state law claim must also be dismissed.

### B.    The extraterritorial application of New York's discrimination law is beyond the subject matter jurisdiction of this Court.

A plaintiff has a discrimination claim under New York law only if the plaintiff is a New York resident, or the alleged discrimination took place in New York State.  *See* N.Y. Exec. L. § 298-a.  *Iwankow v. Mobil Crop.*, 541 N.Y.S.2d 428, 429 (1st Dep't. 1989) ("absent an allegation that a discriminatory act was committed in New York or that a New York State resident was discriminated against, New York's courts have no subject matter jurisdiction over the alleged wrong.").  *Accord Thomas v. Texaco, Inc.*, 998 F.Supp. 368, 371 (S.D.N.Y. 1998); *Ceaser v. Interoute Telecommunications*, Inc., 00-cv-8692 (DLC), 2001 WL 648946 at *3 (S.D.N.Y. June 12, 2001).  Because Plaintiff is not a New York resident, his claim must rest on discrimination committed in New York State.[6]

---

[6]    Plaintiff admits that he is a resident of Switzerland, not New York. (Compl. ¶ 8).  Prior to becoming a resident of Switzerland, he spent fifteen years (1985-2000) living and working in France.

The Complaint alleges in conclusory fashion that the "decision to terminate plaintiff's employment was made, reviewed and/or approved in New York." (Compl. ¶ 71). But the Complaint does not and could not allege any facts relating to PMI Inc. to support this allegation, and so fails to provide any basis for this Court to exercise subject matter jurisdiction over Plaintiff's claims against PMI Inc.  *See Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185-186 (2d Cir. 1998) ("conclusory non-fact-specific jurisdictional allegations" do not even entitle a plaintiff to discovery on jurisdictional issues, much less permit a complaint to survive a motion to dismiss); *In re Terrorist Attacks on September 11, 2001*, 349 F.Supp.2d 765, 783 (S.D.N.Y. 2005).  Moreover, even Plaintiff's conclusory allegation -- which does not mention PMI Inc. -- is incorrect, for the decision to terminate his employment was taken by PMI Management S.A., through Andre Reiman, in Switzerland.  (Reiman Decl. ¶¶ 2, 7, 8).

In addition, even if Plaintiff's allegation were true, decisions made at a New York corporate headquarters do not constitute discriminatory acts occurring in New York "if the employees affected by the decisions work outside New York."  *Balance v. Energy Transportation Corp.*, 00-cv-9180 (LMM), 2001 WL 1246586 at *11 (S.D.N.Y. Oct. 11, 2001) (dismissing NYSHRL claim brought by Georgia resident against New York corporation predicated on employee policies allegedly originating from employer's New York office); *Duffy v. Drake Beam Morin*, 96-cv-5606 (MBM), 1998 WL 252063 at *13 (S.D.N.Y. May 19, 1998) (dismissing NYSHRL claim where employer made decision in New York to fire non-resident employee who worked in New Jersey).  Plaintiff worked and resided in Switzerland (Compl. ¶¶ 8-9), so he has no NYSHRL claim.

Accordingly, this Court does not have subject matter jurisdiction over Plaintiff's state law claim against PMI Inc.

16

## Conclusion

For all of the foregoing reasons, the Complaint should be dismissed pursuant to

Fed. R. Civ. P. 12(b)(1).

Dated: New York, New York
January 14, 2008

Respectfully submitted,

HUNTON & WILLIAMS LLP

By:_____

Shawn Patrick Regan, Esq.
Stephen R. Blacklocks, Esq.
Jacob F.M. Oslick, Esq.
200 Park Avenue
New York, New York  10166
(212) 309-1000

*Attorneys for Philip Morris International Inc.*

17

## DECLARATION OF SERVICE

Bradford C. Mulder, hereby declares under penalty of perjury pursuant to 28 U.S.C. § 1746.

I am Managing Clerk at the law firm of Hunton & Williams LLP, attorneys for Defendant Philip Morris International Inc.

That on January 14, 2008, I served a true copy of the attached Memorandum of Law in Support of Defendant Philip Morris International Inc.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction, on counsel of record, at the addresses listed below via first class mail, by depositing the same in a duly addressed, enclosed and sealed wrapper, with the correct postage thereon, in an official letter box duly maintained by the Government of the United States of America within the State of New York.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 14, 2008.

Bradford C. Mulder

TO:     Robert B. Stulberg, Esq.
        Broach & Stulberg, L.L.P.
        One Penn Plaza --Suite 2016
        Suite 2016
        New York, New York 10119

        *Attorney for Plaintiff D'Arcy Quinn*

        Howard L. Ganz, Esq.
        Proskauer Rose LLP
        1585 Broadway
        New York, New York 10036

        *Attorneys for Defendant Altria Group, Inc.*