UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
D'ARCY QUINN,                                               :
                                                            :
                             Plaintiff,              :
                                                            :
          - against -                                    :    07-CV-8783 (LTS) (RLE)
                                                            :
ALTRIA GROUP, INC. (f/k/a PHILIP MORRIS                     :
COMPANIES), d/b/a itself, d/b/a ALTRIA                      :
CORPORATE SERVICES, INC. (f/k/a PHILIP                      :
MORRIS CORPORATE SERVICES, INC.), d/b/a                     :
PHILIP MORRIS INTERNATIONAL INC., d/b/a                     :
PHILIP MORRIS INTERNATIONAL                                 
MANAGEMENT, S.A.;                                           :
and                                                         :
PHILIP MORRIS INTERNATIONAL INC., d/b/a                     :
itself and d/b/a PHILIP MORRIS                              
INTERNATIONAL MANAGEMENT, S.A.                              :
                                                            :
                             Defendants.             :
------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PHILIP MORRIS
INTERNATIONAL INC.'S MOTION FOR RECONSIDERATION, OR, IN THE
ALTERNATIVE, FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292(b)**

Shawn Patrick Regan, Esq.
Stephen R. Blacklocks, Esq.
Jacob F.M. Oslick, Esq.
HUNTON & WILLIAMS LLP
200 Park Avenue
New York, New York  10166
(212) 309-1000

*Attorneys for Philip Morris International Inc.*

March 3, 2008

**Table of Contents**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT...................................................................................................................................2

   I.    THE COURT SHOULD RECONSIDER ITS FEBRUARY 15 ORDER..........................2

   II.   IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY ITS ORDER
        PURSUANT TO 28 U.S.C. § 1292(b) ............................................................................9

      (i)   The Court's order involves a controlling question of law ..............................9

      (ii)  There is substantial ground for difference of opinion...................................10

      (iii) An immediate appeal may materially advance the litigation's ultimate
           termination ....................................................................................................10

      (iv) A stay of merits discovery is warranted.........................................................11

CONCLUSION..............................................................................................................................12

# Table of Authorities

**Cases:**

*Arbaugh v. Y & H Corp.*,
    546 U.S. 500 (2006)..................................................................................................*passim*

*Ayyash v. Bank Al-Madina*,
    2006 WL 587342 (S.D.N.Y. Mar. 9, 2006).......................................................................3, 10

*Bowles v. Russell*,
    127 S.Ct. 2360 (2007)..............................................................................................1, 4, 5, 8, 10

*Consub Delaware LLC v. Schahin Engenharia Limitada*,
    476 F. Supp. 2d 305 (S.D.N.Y. 2007) .........................................................................................10

*E. ON AG v. Acciona, S.A.*,
    468 F. Supp. 2d 537 (S.D.N.Y. 2006) ..................................................................................... 4 fn. 1

*Environmental Defense Fund, Inc. v. Massey*,
    986 F.2d 528 (D.C. Cir. 1993)...............................................................................................8

*F. Hoffmann-LaRoche Ltd. v. Empagran S.A.*,
    542 U.S. 155 (2004)..............................................................................................................7

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    245 F.R.D. 147 (S.D.N.Y. 2007).......................................................................................... 4 fn. 1

*Hartford Fire Ins. Co. v. California*,
    509 U.S. 764 (1993)..............................................................................................................7

*John R. Sand & Gravel Co. v. United States*,
    128 S.Ct. 750 (2008)..............................................................................................1, 5, 8, 10

*In re Lloyd's American Trust Fund Litig.*,
    1997 WL 458739 (S.D.N.Y. Aug. 12, 1997)......................................................................9. 11

*Morales v. Quintiles Transnational Corp.*,
    25 F. Supp. 2d 369 (S.D.N.Y. 1998) ..................................................................................2

*In re National Australia Bank Sec. Litig.*,
    2006 WL 3844465 (S.D.N.Y. Oct. 25, 2006)..................................................................... 4 fn. 1

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
    2007 WL 2766731 (S.D.N.Y. Sept. 24, 2007) ............................................... 1, 2, 3, 10, 12 fn. 5

*North-South Fin. Corp. v. Al-Turki*,
    100 F.3d 1046 (2d Cir. 1996) ..............................................................................................3

*O'Mahony v. Accenture Ltd.*,
    2008 WL 344710 (S.D.N.Y. Feb. 7, 2008) ............................................................. 3, 10

*In re Parmalat Sec. Litig.*,
    497 F. Supp. 2d 526 (S.D.N.Y. Sept. 26, 2007) ........................................................ 10

*Phillips v. St. George's University*,
    2007 WL 3407728 (E.D.N.Y. Nov. 15, 2007) ....................................................... 3 fn. 1

*Republic of Colombia v. Diageo North America, Inc.*,
    2007 WL 1813744 (E.D.N.Y. June 19, 2007) ..................................................... 10, 11

*In re Rhodia S.A. Sec. Litig.*,
    2007 WL 2826651 ................................................................................................. 4 fn. 1

*Steele v. Bulova Watch Co.*,
    344 U.S. 280 (1952) .................................................................................................. 6, 7

*The Schooner Exchange v. McFaddon*,
    11 U.S. 116 (1812) ......................................................................................................... 6

*In re World Trade Center Disaster Site Litig.*,
    503 F.3d 167 (2d Cir. 2007) .......................................................................................... 11

**Statutes:**

15 U.S.C. § 6a ......................................................................................................................... 8

28 U.S.C. § 1292(b) ................................................................................................ 1, 9, 11, 12

28 U.S.C. § 2501 ................................................................................................................ 5 fn.2

29 U.S.C. § 623(h) ............................................................................................................. 8 fn.4

**Rules:**

Fed R. Civ. P. 12(b)(1) ................................................................................................ *passim*

**Preliminary Statement**

In its February 15 ruling, the Court denied Philip Morris International Inc.'s motion to dismiss for lack of subject matter jurisdiction, concluding that the Supreme Court's decision in *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006), had overruled existing Second Circuit law holding that challenges to the extraterritorial application of a statute are challenges to a court's subject matter jurisdiction. But *Arbaugh* addressed Title VII's numerosity limitation, not the issue of extraterritoriality. As this Court itself recently held in *Norex Petroleum Ltd. v. Access Indus., Inc.*, 2007 WL 2766731 (S.D.N.Y. Sept. 24, 2007), and as reflected in several post-*Arbaugh* decisions from other District Judges in this Circuit, until the Second Circuit holds that *Arbaugh* applies to challenges to the extraterritorial application of a statute, district courts are obliged to follow existing Second Circuit law, not plaintiff's interpretation of *Arbaugh*. Under existing Circuit law, it is settled that the extraterritorial application of the ADEA should be challenged under Rule 12(b)(1).

Furthermore, two recent decisions from the Supreme Court -- *Bowles v. Russell*, 127 S.Ct. 2360 (2007), and *John R. Sand & Gravel Co. v. United States*, 128 S.Ct. 750 (2008) -- have acknowledged an important limitation on *Arbaugh*; and that limitation, we respectfully submit, makes clear that the issue of extraterritoriality should continue to be understood as jurisdictional, notwithstanding *Arbaugh*.

PMI Inc. therefore respectfully requests that the Court reconsider its February 15 ruling; in the alternative, PMI Inc. asks the Court to certify its order under 28 U.S.C. § 1292(b) to allow the Second Circuit to decide whether *Arbaugh* applies to the extraterritorial application of the ADEA, and to stay litigation of the merits until the Second Circuit has addressed the issue.

- 2 -

**Argument**

**I.     THE COURT SHOULD RECONSIDER ITS FEBRUARY 15 ORDER**

A court should grant a motion for reconsideration if it "overlooked matters or controlling decisions which might have materially influenced the earlier decision." *Morales v. Quintiles Transnational Corp.*, 25 F. Supp. 2d 369, 372 (S.D.N.Y. 1998); Local Civil Rule 6.3.

The Court denied PMI Inc.'s Rule 12(b)(1) motion on the ground that the motion relied on the Second Circuit's pre-*Arbaugh* precedents, which hold that a challenge to the extraterritorial application of a federal statute is properly brought under Rule 12(b)(1). The Court ruled that, under *Arbaugh*, it should consider a statutory limitation as jurisdictional only if Congress "rank[s]" it as such. *Arbaugh*, 546 U.S. at 516.

In *Arbaugh*, the plaintiff had alleged gender discrimination under Title VII. After a jury verdict for plaintiff, defendant contended that the court lacked subject matter jurisdiction because it had fewer than 15 employees, so was not amenable to suit under Title VII. The District Court granted defendant's Motion to Dismiss, and the Fifth Circuit affirmed. The Supreme Court reversed, holding that employee numerosity under Title VII went to the claim's merits, and not to the court's subject matter jurisdiction. Thus, *Arbaugh* addressed the numerosity requirement; it did not consider a federal statute's extraterritorial reach. And, unlike numerosity, extraterritoriality involves inherent limitations on the Court's power to adjudicate foreign conduct in foreign countries.

Indeed, in *Norex,* where the issue was whether an alleged racketeering scheme with limited connections to the United States fell within the extraterritorial scope of RICO, this Court held that *Arbaugh* did not address extraterritoriality. Thus, this Court dismissed plaintiff's complaint for lack of subject matter jurisdiction, noting specifically that it was obliged to follow

Second Circuit precedent characterizing questions over the scope of a statute's extraterritorial application as questions of subject matter jurisdiction. As the Court stated:

> The Second Circuit has not yet addressed the question of whether *Arbaugh* compels the treatment of issues relating to the extraterritorial reach of federal statutes as merits questions rather than ones going to subject matter jurisdiction. In a line of cases ending with *North-South Fin. Corp. v. Al-Turki*, 100 F.3d 1046 (2d Cir. 1996), however, the Circuit characterized limits on RICO's extraterritorial application as constraints on district courts' subject-matter jurisdiction. This Court is bound by the Court of Appeals' decisions until such time as they are directly overruled by that Court or the Supreme Court. Accordingly, the Court will apply the *North-South Finance* approach in evaluating Defendants' arguments, treating the extraterritoriality issue as one that implicates subject matter jurisdiction. [*Id.* at *3 (emphasis added, citations omitted).]

The Second Circuit has still not addressed whether *Arbaugh* requires issues relating to the extraterritorial reach of federal statutes to be treated as questions going to the merits rather than to subject matter jurisdiction. So, as in *Norex* (which is currently on appeal), the Court should conclude it is bound by the Second Circuit's pre-*Arbaugh* jurisprudence treating extraterritoriality as an issue of subject matter jurisdiction.

Other district courts have also held that, until the Second Circuit determines whether *Arbaugh* extends to extraterritoriality, they must follow the Circuit's pre-*Arbaugh* law. *See Ayyash v. Bank Al-Madina*, 2006 WL 587342 at *4 n.2 (S.D.N.Y. Mar. 9, 2006) (treating RICO extraterritoriality as jurisdictional because *North-South Finance* remains binding until "directly overturned"); *O'Mahony v. Accenture Ltd.*, 2008 WL 344710 at *2 (S.D.N.Y. Feb. 7, 2008) (holding in a Sarbanes-Oxley whistleblower case that "the issue of extraterritorial application of a federal statute implicates subject matter jurisdiction"; citing *Norex*).[1] This

---

[1] Other post-*Arbaugh* decisions from courts within the Second Circuit have held, without specifically discussing *Arbaugh*, that extraterritoriality can be challenged under 12(b)(1) even when a statute's extraterritorial application is not expressly linked to the grant of subject matter jurisdiction. In *Phillips v. St. George's University*, 2007 WL 3407728 at *2 (E.D.N.Y. Nov. 15, 2007), a case alleging gender discrimination, the court held that "[a] case that comes

standard treatment of extraterritoriality as jurisdictional, post-*Arbaugh*, perhaps reflects the linguistic oddity inherent in suggesting that whether Congress intended a statute to apply extraterritorially to a given case somehow concerns the "merits" of plaintiff's discrimination and retaliation claims. This, by itself, is a good indication of how different extraterritoriality is from Title VII's minimum employee threshold, for there is nothing odd in saying that the latter is a "merits" issue.

In fact, the Court's decision denying PMI Inc.'s motion is the only decision holding that the Second Circuit's pre-*Arbaugh* cases on extraterritoriality and subject matter jurisdiction were overturned by *Arbaugh*. Because that decision conflicts both with the Court's own decision in *Norex* and with the weight of post-*Arbaugh* authority, the Court should reconsider its decision denying PMI Inc.'s 12(b)(1) motion.

The Court's order is also in conflict with two post-*Arbaugh* decisions, rendered by the Supreme Court itself, that establish an exception to *Arbaugh*. Indeed, that exception, established in cases involving time limitations, is -- as a matter of logic and history -- even more appropriately applied to the issue of extraterritoriality.

In *Bowles v. Russell*, 127 S.Ct. 2360 (2007), the Supreme Court held that petitioner's failure to file an appeal within the time set forth in Federal Rule of Appellate Procedure 4(a)(6) deprived the court of subject matter jurisdiction to consider the appeal, despite the lack of any statutory language expressly linking the time requirements to subject matter

---

before a United States court involving conduct committed outside the United States raises the question of the court's subject matter jurisdiction." And in a number of cases, courts have adjudicated challenges to the extraterritorial application of the securities laws under Rule 12(b)(1). *E.g., In re Rhodia S.A. Sec. Litig.*, 2007 WL 2826651 at *7-9 (S.D.N.Y. Sep. 26, 2007); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 245 F.R.D. 147, 173-174 (S.D.N.Y. 2007); *E.ON AG v. Acciona, S.A.*, 468 F. Supp. 2d 537, 546 (S.D.N.Y. 2006); *In re National Australia Bank Sec. Litig.*, 2006 WL 3844465 at *2-4 (S.D.N.Y. Oct. 25, 2006).

jurisdiction. The Court held that "it is indisputable that time limits for filing a notice of appeal have been treated as jurisdictional in American law for well over a century." *Id.* at 2364 n.2. The Court distinguished *Arbaugh*, stating simply that "[i]n *Arbaugh*, the statutory limitation was an employee-numerosity requirement, not a time limit." *Id.* at 2365. And just last month, in *John R. Sand & Gravel Co. v. United States*, 128 S.Ct. 750 (2008), the Supreme Court cited *Arbaugh*, but affirmed a decision from the Federal Court of Claims that held that the court lacked jurisdiction to consider a takings claim because the claim was brought outside the limitations period. Despite the absence of statutory language expressly linking the limitations period with federal court jurisdiction,[2] the Supreme Court relied on a line of its own precedents going back to 1883 holding that a federal court lacks the jurisdiction to consider time-barred claims against the government, even when the government itself does not raise the bar as a defense.[3]

Just as the Supreme Court's review of its own precedents going back over 100 years caused it to conclude in *Bowles* and *John R. Sand & Gravel* that the issues before it were in fact jurisdictional, so too here the Supreme Court's historical treatment of extraterritoriality shows that extraterritoriality is quintessentially a question of subject matter jurisdiction.

This treatment of extraterritoriality as jurisdictional begins at the very foundations of our legal system. Under the common law, sovereigns were "incapable" of giving their laws

---

[2] The statute reads: "Every claim of which [the Court of Federal Claims] has jurisdiction shall be barred" unless filed within six years of the claim accruing. 28 U.S.C. § 2501.

[3] Immediately after citing *Arbaugh,* the Court adds: "As a convenient shorthand, the Court has sometimes referred to the time limits in such statutes [as that it was considering] as 'jurisdictional.'" *Id.* at 753. But the Court's conclusion is that the Court of Claims lacked the *power* to adjudicate late claims against the government, even when the government itself did not raise the time bar as a defense. This is a restraint on the Court of Claims' *jurisdiction*, where the term is being used with its traditional meaning, and not as a "convenient shorthand." *See Arbaugh* at 514 (that a court can raise an issue on its own motion, even if it is not asserted as a defense, is a hallmark of the issue being jurisdictional).

extraterritorial effect, as doing so infringed on another sovereign's rights and power. *The Schooner Exchange v. McFaddon*, 11 U.S. 116, 137 (1812). Courts, having only the power of their sovereign, thus lacked jurisdiction to adjudicate foreign disputes under their nation's laws. *See id.* at 136 ("The jurisdiction of courts is a branch of that which is possessed by the nation as an independent sovereign power."). That is, if Congress did not intend for the statute to reach certain extraterritorial conduct, a federal court lacks the power to adjudicate claims arising from such foreign conduct.

Today, it is well settled that Congress has the authority to apply its statutes abroad. But, to overcome the general presumption against extraterritoriality, Congress must affirmatively extend the statute extraterritorially (either explicitly, or by a showing of clear Congressional intent). The scope of Congress' extension, as interpreted by the courts, therefore becomes the outer limits of both the statute's reach and the court's jurisdiction to adjudicate statutory disputes.

For instance, in *Steele v. Bulova Watch Co.*, 344 U.S. 280 (1952), defendant sought to dismiss plaintiff's Lanham Act claims for lack of subject matter jurisdiction, because the alleged trademark infringement occurred in Mexico. The Supreme Court began its analysis by stating "we are concerned solely with the District Court's jurisdiction over the subject matter of this suit." *Id.* at 282 n.2. Addressing the subject matter jurisdiction question, the Court concluded that "[r]esolution of the jurisdictional issue in this case . . . depends on construction of exercised congressional power." *Id.* at 282-83. That is, the question at issue -- whether Congress intended for the Lanham Act to reach the kind of foreign conduct that plaintiff alleged had occurred -- was a question as to the court's subject matter jurisdiction. The Court then concluded that subject matter jurisdiction existed because defendant's alleged infringement

"filtered through the Mexican border into this country," and thereby qualified as the kind of conduct that Congress sought to cover in passing the Lanham Act. *Id.* at 286.

Similarly, in *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 795-796 (1993), the Court addressed subject matter jurisdiction in the context of the Sherman Act. The Court concluded that "the District Court undoubtedly had jurisdiction of these Sherman Act claims . . . . [because] it is well established by now that the Sherman Act applies to foreign conduct that was meant to produce and did in fact produce some substantial effect in the United States. Such is the conduct alleged here." (citations omitted). In short, the court had jurisdiction because the Sherman Act "applie[d]" to the specific kind of conduct that plaintiffs alleged. In so doing, the Court specifically rejected Justice Scalia's dissent, which argued that subject matter jurisdiction existed because plaintiffs raised "nonfrivolous" claims. *See id.* at 812 (Scalia, J., dissenting).

And most recently, in *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155 (2004), the Court again considered whether the Sherman Act applied to foreign conduct and foreign injury. In *F.Hoffmann-La Roche Ltd.*, the district court dismissed the action for lack of subject matter jurisdiction, and the D.C. Circuit reversed (although it never disputed that it was resolving a question of jurisdiction). The Supreme Court reversed and remanded, holding that the Sherman Act did not give rise to a claim for foreign harm caused by foreign conduct. *Id.* at 165-66. The Court quoted from a leading treatise on antitrust law, which pointed out that, were the D.C. Circuit right, "[e]ffectively, the United States courts would provide worldwide subject matter jurisdiction to any foreign suitor wishing to sue its own local supplier." *Id.* at 166. The Court stated: "[w]e agree with the comment." *Id.* at 167. Notably, the Sherman Act's extraterritorial provisions do not contain any language expressly linking its extraterritorial scope with a court's subject matter jurisdiction. Rather, the statute simply provides that it applies to

foreign conduct that has a "direct, substantial and reasonably foreseeable effect" on U.S. commerce. 15 U.S.C. § 6a.

In the instant case, Congress has extended application of the ADEA extraterritorially to instances where the foreign employer is "controlled" by an American company. Any act by a foreign employer not controlled by a U.S. company would be beyond the extraterritorial scope extended by Congress and therefore beyond the subject matter jurisdiction of federal courts. Thus, PMI Inc.'s argument here, that the acts complained of were beyond the extraterritorial scope defined by Congress, is properly brought under Rule 12(b)(1).

The history of courts' treatment of extraterritoriality thus demonstrates that notion's essential ties to jurisdiction. As the D.C. Circuit has succinctly stated, "[e]xtraterritoriality is essentially, and in common sense, a jurisdictional concept concerning the authority of a nation to adjudicate the rights of particular parties and to establish the norms of conduct applicable to events or persons outside its borders." *Environmental Defense Fund, Inc. v. Massey*, 986 F.2d 528, 530 (D.C. Cir. 1993) (emphasis added). Thus, unlike numerosity -- which has no logical or historical link with subject matter jurisdiction -- extraterritoriality has long been treated as a jurisdictional notion and not as an issue going to the merits.[4] Under *Bowles* and *John R. Sand & Gravel*, the historical recognition of extraterritoriality as

---

[4] In addition, *Arbaugh*, by its terms, applies to only "statutory *limitations* on coverage." *Arbaugh*, 546 U.S. at 516 (emphasis added). Extraterritorial provisions are not "limitations" on a statute's coverage; they are specially created exceptions to the general rule that federal statutes do not apply abroad. Indeed, before the 1984 amendments to the ADEA, which added the present-day § 623(h), the ADEA had no extraterritorial reach at all. Thus, properly understood, 29 U.S.C. § 623(h) does not limit the ADEA's coverage -- it *expands* or *extends* the ADEA to certain specific foreign situations. Accordingly, since § 623(h) is not a "statutory limitation on coverage," but instead is a grant expanding or extending coverage insofar as such coverage would not exist at all absent the provision, *Arbaugh* does not apply for this reason as well.

jurisdictional means that *Arbaugh* does not control. The Second Circuit's precedents treating the extraterritorial application of a statute as jurisdictional therefore continue to be good law.

## II. IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY ITS ORDER PURSUANT TO 28 U.S.C. § 1292(b)

A district court can certify an order for interlocutory appeal when "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The Court's February 15 order satisfies these conditions.

**(i) The Court's order involves a controlling question of law.** A controlling question of law exists if: "(1) reversal of the district court's opinion could result in dismissal of the action, (2) reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action, or (3) the certified issue has precedential value for a large number of cases." *In re Lloyd's American Trust Fund Litig.*, 1997 WL 458739 at *4 (S.D.N.Y. Aug. 12, 1997). If the Second Circuit were to hold that objections to the extraterritorial application of the ADEA are properly brought as challenges to a court's subject matter jurisdiction, this Court should then consider the merits of defendants' 12(b)(1) motions. In deciding those motions, the Court itself could resolve the dispositive question of defendants' alleged "control" of plaintiff's employer. The Court might therefore be able to terminate the case for lack of subject matter jurisdiction without the need for a jury trial and without the need for the parties to take extensive discovery -- much of it in Switzerland -- related to the plaintiff's allegations of discrimination and retaliation. In addition, the certified issue will have precedential value for a large number of cases, as courts within the Second Circuit are frequently

called upon to consider a federal statute's extraterritorial application, and so must know whether, post-*Arbaugh*, they can decide such challenges on Rule 12(b)(1) motions.

   **(ii) There is substantial ground for difference of opinion.** A substantial ground for a difference of opinion exists if: "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *Consub Delaware LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007). This Court held in *Norex* that, notwithstanding *Arbaugh*, it was bound by Second Circuit cases holding that extraterritorial application of U.S. law concerns the court's subject matter jurisdiction. *Norex Petroleum Ltd.*, 2007 WL 2766731 at *3-4. *Ayyash* and *O'Mahony* agree. *Ayash*, 2006 WL 587342 at *4 n.2; *O'Mahony*, 2008 WL 344710 at *2 (citing *Norex*). But these cases cannot be reconciled with the Court's holding in this case that *Arbaugh* requires that extraterritoriality be treated as a merits question. In addition, two other courts within the Circuit have held that *Arbaugh* raises the question (which they did not decide) of whether the Second Circuit's pre-*Arbaugh* extraterritoriality precedents are still good law. *In re Parmalat Sec. Litig.*, 497 F. Supp. 2d 526, 529 (S.D.N.Y. 2007); *Republic of Colombia v. Diageo North America Inc.*, 2007 WL 1813744 at *7-8 (E.D.N.Y. June 19, 2007). Finally, *Bowles* and *John R. Sand & Gravel* indicate that *Arbaugh* does not apply to this case. The Second Circuit has not yet addressed this issue.

   **(iii) An immediate appeal may materially advance the litigation's ultimate termination.** A determination that a challenge to the extraterritorial application of the ADEA implicates the court's subject matter jurisdiction will enable the parties and the Court to have a determination at the outset of whether the ADEA reaches plaintiff's claims here, rather than expending substantial resources and time on jurisdictional and merits discovery, dispositive

motions and then trial, only to later find out that the issue should have been decided under Rule 12(b)(1). *See Republic of Columbia,* 2007 WL 2683689 at *4 (certification appropriate if it "significantly reduce[s] the costs of discovery"). It also may result in the Court ultimately dismissing plaintiff's complaint on Defendants' 12(b)(1) motions. Section 1292(b) certification is appropriate where reversal "could result in dismissal of the action." *In re Lloyd's American Trust Fund Litig.,* 1997 WL 458739 at *7.

**(iv) A stay of merits discovery is warranted.** In certifying PMI Inc.'s Section 1292(b) appeal, the Court should also issue a partial stay of discovery, covering discovery related to plaintiff's substantive claims of discrimination and retaliation. As demonstrated above, substantial authority indicates that *Arbaugh* did not overrule existing Second Circuit precedent treating extraterritoriality as jurisdictional. *See supra* pp. 2-8. Therefore, PMI Inc.'s appeal presents a "strong showing" of likelihood of success on the merits. *See In re World Trade Center Disaster Site Litig.,* 503 F.3d 167, 170 (2d Cir. 2007). If PMI Inc.'s argument is correct, then a substantial public interest also comes into play -- avoiding subjecting defendants and the courts to litigation based on claims that may ultimately be determined to be beyond the extraterritorial scope of the underlying statute. *See id.* at 170 (recognizing the public interest as a factor in whether to stay discovery). Moreover, a partial stay of discovery would neither injure plaintiff nor delay the litigation because, during the appeal process, the parties would undertake discovery on jurisdictional issues, as agreed to in the Preliminary Pre-Trial Statement previously submitted to the Court.

## Conclusion

For the reasons stated in this memorandum and in PMI Inc.'s memorandum in support of its 12(b)(1) motion, the Court should either reconsider its February 15 order denying PMI Inc.'s motion, or should certify, under 28 U.S.C. § 1292(b), the issue of whether a challenge to the extraterritorial application of the ADEA can be brought pursuant to Rule 12(b)(1).[5]

Dated: New York, New York
March 3, 2008

Respectfully submitted,

HUNTON & WILLIAMS LLP

By: _____
Shawn Patrick Regan, Esq.
Stephen R. Blacklocks, Esq.
Jacob F.M. Oslick, Esq.
200 Park Avenue
New York, New York 10166
(212) 309-1000
sregan@hunton.com
sblacklocks@hunton.com
joslick@hunton.com

*Attorneys for Philip Morris International Inc.*

---

[5] The fact that PMI Inc.'s opening brief supporting its Rule 12(b)(1) motion to dismiss did not cite *Norex*, or explain why *Arbaugh* did not overturn the Second Circuit's established precedents treating extraterritoriality as jurisdictional, is of no consequence. A movant's refutation of the arguments made by the non-movant properly belongs in a reply brief, which PMI Inc. had no opportunity to file. In any event, the argument that a court lacks subject matter jurisdiction can never be waived. *See Arbaugh*, 546 U.S. at 514 ("courts . . . have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party").

## DECLARATION OF SERVICE

Bradford C. Mulder, hereby declares under penalty of perjury pursuant to 28 U.S.C. § 1746.

I am Managing Clerk at the law firm of Hunton & Williams LLP, attorneys for Defendant Philip Morris International, Inc.

That on March 3, 2008, I served a true copy of the attached Memorandum of Law in Support of Philip Morris International Inc.'s Motion for Reconsideration, or, in the Alternative, for Certification Pursuant to 28 U.S.C. § 1292(b), on counsel of record, at the addresses listed below via first class mail, by depositing the same in a duly addressed, enclosed and sealed wrapper, with the correct postage thereon, in an official letter box duly maintained by the Government of the United States of America within the State of New York.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 3, 2008.

Bradford C. Mulder

TO: Robert B. Stulberg, Esq.
BROACH & STULBERG, LLP
One Penn Plaza
Suite 2016
New York, New York 10119

*Attorney for Plaintiff D'Arcy Quinn*

Howard L. Ganz, Esq.
Proskauer Rose LLP
1585 Broadway
New York, New York 10036

*Attorneys for Defendant Altria Group, Inc.*